UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TODD EDWARD HENKE, #162250,

    Petitioner,                                          Civil Action No. 17-CV-12092

vs.                                                              HON. BERNARD A. FRIEDMAN

MARK MCCULLICK,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITIONER'S APPLICATION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS**

**I.    Introduction**

        This is a *pro se* habeas case brought pursuant to 28 U.S.C. § 2254. Petitioner asserts that he is being held in violation of his constitutional rights. In 2014 petitioner was convicted of first-degree murder, Mich. Comp. Laws § 750.316, and felonious assault, Mich. Comp. Laws § 750.82, following a jury trial in Oakland County Circuit Court and was sentenced as a fourth habitual offender to concurrent terms of life imprisonment without the possibility of parole. Petitioenr raises claims concerning the conduct of the prosecutor and the effectiveness of his trial counsel. For the reasons stated below, the Court shall deny the petition, deny a certificate of appealability, and deny leave to proceed on appeal *in forma pauperis*.

**II.    Facts and Procedural History**

        Petitioner's convictions arise from the fatal stabbing of one man and the non-fatal assault upon another man at a residence in Waterford, Michigan, in January, 2014. The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, as follows:

Defendant's convictions arise from the stabbing death of Kurt Houghteling, and felonious assault of David Wasiel, both of whom were defendant's friends. Wasiel and Doyle Odle were both present when the victim was stabbed, and they each testified that defendant lunged toward Houghteling when the stabbing occurred. The defense theory at trial was that defendant stabbed Houghteling accidently.

The defense theory of an accidental stabbing was supported solely by defendant's testimony, on direct examination, that he inadvertently stabbed the victim when he tripped over the victim's leg and fell on top of the victim.

* * *

At trial, the prosecutor questioned defendant as follows regarding his failure to offer the accident theory before trial:

Q. And you've told this jury your story about what you say happened that night, right?

A. Exactly as I know how it happened.

Q. Well, how come you never told anybody else this story? I mean you had—

A. I haven't seen nobody.

Q. Oh, really. Didn't Detective Morgan ask to talk to you and ask for your story?

A. I don't remember half of it, sir.

* * *

Q. Didn't Detective Morgan ask to talk to you and ask for your story, and you didn't tell him anything like that, right?

A. I don't really remember that.

Q. Well, do you remember that you haven't told anybody this story before at all?

A. I've been in a cell for eight months.

2

Q. Isn't it true that this is the first time you have ever told anybody this story?

A. No.

Q. Who else have you told?

A. People in my cell.

Q. Okay, how 'bout people from the law enforcement community, how 'bout the detective? You never told the detective this story.

A. No.

Q. And you had a chance to tell the Detective this story.

A. I didn't know what to do. I was just messed up over everything.

* * *

Q. Okay, but the point is that you could have told the officers the story, and you didn't right?

A. I don't remember—remember what happened, sir.

Q. But you don't remember what happened.

A. I didn't remember what happened 'till well after that.

In rebuttal, the prosecutor called Detective Morgan, who testified that after defendant was in custody, he twice approached defendant to speak to him about the offense, but defendant declined to speak to the officer and on at least one of the occasions invoked his right to counsel.

In closing argument, the prosecutor questioned why defendant did not previously raise his accident story, stating:

He never told anybody that story before. Now, think about that for a second. He accidentally kills somebody. He has at least two opportunities to tell the police what happened. Well, at one time, he was drunk. Okay. Not too drunk to tell the police I'm not tellin' you anything. You can talk to my lawyer. So he knows what he was doing. He knows where he was. He knows what was going on. He's

> not too drunk to not know what was going on. And then the second day when he presumably was not as drunk, has another opportunity to tell the police it was a terrible accident, nothing. Does that make sense to you? Is that what you would do if there was this terrible accident? Have an opportunity twice now to tell your story, and never tell a story at all, except for your cell mates in the jail, never tell anybody that story until he comes in here, and tells you 14 people the story. If it was true, he would have told the story months ago when he had the chance. He didn't, and it's proof that it's not true. He says it was just all a terrible accident, this stabbing of Kurt Hoteling [sic]. He says it was just a terrible accident.

*People v. Henke*, No. 324358, 2016 WL 620184, *1-3 (Mich. Ct. App. Feb. 16, 2016) (unpublished).

Additionally, the Court adopts the detailed summary of the trial testimony prepared by the prosecutor on direct appeal, as set forth in the respondent's answer to the petition, to the extent those facts are consistent with the record. *See* Resp't's Answer, pp. 4-31.

Following his convictions and sentencing, petitioner filed an appeal of right with the Michigan Court of Appeals raising the same claims contained in the instant petition. The Michigan Court of Appeals denied relief on those claims and affirmed petitioner's convictions. *Henke*, 2016 WL 620184, at *1-5. Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Henke*, 499 Mich. 987, 882 N.W.2d 139 (2016). Petitioner thereafter filed the instant petition in which he raises the following claims:

    I.     The prosecutor deprived him of his due process right to a fair trial and his Fifth Amendment rights by questioning him about and referencing his silence and invocation of his right to an attorney.

    II.    Trial counsel was ineffective for failing to object to the previous issue.

In his answer, respondent argues that the first claim is barred by procedural default and that both claims lack merit.

### III. Legal Standards

The following standard applies in federal habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21; *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential

standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333 n.7).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). The Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits." *Harrington*, 131 S. Ct. at 785 (internal quotation marks omitted). Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."

6

*Early v. Packer*, 537 U.S. 3, 8 (2002). While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).

Further, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV. Discussion

### A. Procedural Default

Respondent argues that petitioner's first claim is barred by procedural default. It is well settled, however, that federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003). The Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). In this case, the procedural default issue is somewhat complicated while the substantive issues are easier to resolve. Consequently, the interests of judicial economy are best served by addressing the merits of the claims.

**B.     Merits**

**1.     Prosecutorial Misconduct/Fifth Amendment Claim**

Petitioner first argues that he is entitled to habeas relief because the prosecutor engaged in misconduct and violated his Fifth Amendment rights by questioning him about, and referencing, his post-arrest silence and request for counsel.

Prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a prosecutorial misconduct claim, a habeas petitioner must show that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Parker v. Matthews*, 567 U.S. 37, 45 (2012).

The Fifth Amendment states that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Supreme Court has held that "it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that [the defendant] stood mute or claimed his privilege in the face of accusation." *Miranda v. Arizona*, 384 U.S. 436, 468 n.37 (1966). Consistent with *Miranda*, prosecutors may not comment on a defendant's post-arrest silence in their case in chief, on cross-examination, or in closing arguments. *See Doyle v. Ohio*, 426 U.S. 610, 619-20 (1976); *United States v. Tarwater*, 308 F.3d 494, 511 (6th Cir. 2002).

The Michigan Court of Appeals considered this claim on plain error review, discussed *Doyle*, and denied relief on this claim essentially finding that any *Doyle* error was

harmless. The court explained in relevant part:

> In the present case, although Detective Morgan testified in rebuttal regarding his contacts with defendant, who declined to give a statement, he did not indicate when defendant was placed under arrest or given Miranda warnings. Although defendant acknowledges this deficiency and has submitted a police report with his brief on appeal, this constitutes an improper expansion of the record on appeal.1 *People v. Nix*, 301 Mich. App. 195, 203; 836 NW2d 224 (2013). Even assuming, however, that defendant's silence occurred post-arrest, post-Miranda, and that the prosecutor therefore violated the rule in *Doyle*, we conclude that the error did not affect defendant's substantial rights because it did not affect the outcome of the trial. Defendant bears the burden of demonstrating that a plain error affected his substantial rights. *Carines*, 460 Mich. at 763.
>
> Defendant testified, on direct examination, that he was "goofing off" while carrying the knives when he tripped on the victim's leg, causing him to accidently fall and strike the victim in the chest. On cross-examination, the prosecutor elicited the following testimony:
>
> Q. And by the way, why did you pick up the knives anyway?
>
> A. I don't really know, sir.
>
> Q. You don't really know?
>
> A. No, I really don't.
>
> Q. So it's possible you wanted to stab somebody then, isn't it?
>
> A. I don't remember.
>
> Q. So it is possible you wanted to stab somebody, and you just don't remember it.
>
> A. (Indiscernible).
>
> Q. What?
>
> A. I said yes.
>
> \* \* \*

Q. Okay, so it's possible you were walking in there thinking I'm gonna' stab Kurt, and kill him, right?

A. I can't—I can't—I don't really know.

Defendant further testified on cross-examination that he first started remembering what happened about three or four months after the offense, but said he remembered just "bits and pieces." When questioned further about picking up the knives, defendant again expressed difficulty remembering, explaining that "it's all cloudy," and he again stated that he did not recall what he intended to do with the knives. Defendant stated that he did not remember much about the stabbing because he was "pretty blind ... drunk by then." Defendant also testified that he did not remember threatening Wasiel, but admitted "I may have." Additional questioning led to the following exchange:

Q. How 'bout the knife that ends up in Kurt Hoteling's [sic] chest, you aren't saying somebody else did that. You did that, right?

A. I guess I did.

Q. What do you mean you guess you did?

A. I guess I did.

Q. You guess?

A. I'm not—I'm not sure.

Q. You're not sure?

A. I'm not sure of anything.

Q. You're not sure of anything. So—

A. No, I'm not.

* * *

Q. So if you're not sure of anything, you could just be makin' all of this up, right?

A. Yeah, if he wants, yeah, I don't know what to tell you.

10

The potential prejudicial effect of the evidence of defendant's silence was its tendency to undermine the credibility of defendant's version of the events surrounding the stabbing, specifically that the stabbing was accidental, because defendant did not provide that exculpatory explanation when a police officer attempted to speak to him shortly after the offense. Even without the evidence of defendant's silence, however, defendant's remaining testimony on cross-examination significantly undercut the reliability of his direct examination testimony. Defendant admitted that, due to his intoxication, he either did not know or could not remember key details surrounding the offense. He further admitted that he did not know what he intended to do with the knives or whether he intended to stab someone and, more significantly, he stated that he was not even sure if he was the person who actually stabbed the victim because he was "not sure of anything." Given this testimony, there is no reasonable likelihood that the jury would have relied on the evidence of defendant's silence to discredit his claim of an accidental stabbing. Defendant's self-admitted inability to recall significant details surrounding the offense and his testimony that he was "not sure of anything" independently signaled to the jury that it was necessary to look to other evidence to determine the relevant facts.

No other evidence supported defendant's claim of an accidental stabbing. Wasiel testified that defendant became violent when he consumed alcohol, and that he had consumed alcohol throughout the day. Wasiel and Odle both testified that defendant was in an agitated state. He made comments referring to himself as the "Grim Reaper" and "John Gotti," and said that two people would die that day. Defendant's behavior caused Odle to move the knives from the kitchen table, away from defendant. After defendant picked up the two knives from the counter, he challenged Odle and Wasiel to fight. Defendant threw one of the knives over Wasiel's head. Wasiel testified that defendant lunged the second knife into the victim's chest. Odle was not present in the same room to view the entire incident, but he saw defendant suddenly lunge toward the victim. The medical examiner testified that "major force" was necessary to pass the knife through the victim's skin. In light of this testimony, and defendant's admission that he was "not sure of anything," defendant has not established that any error arising from the introduction of the evidence of defendant's silence affected the outcome of the trial. Thus, the error did not affect defendant's substantial rights.

*Henke*, 2016 WL 620184, at *3-5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. A constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (confirming that *Brecht* standard applies in "virtually all" habeas cases). Harmless error analysis applies to *Doyle*-error claims. *See Brecht*, 507 U.S. at 637 (state's improper use of defendant's post-*Miranda* silence to impeach defendant's claim of accident was harmless as it did not have a substantial or injurious effect or influence upon the jury's verdict); *Billingslea v. Jackson*, 83 F. App'x 33, 40 (6th Cir. 2003). In this case, the testimony of the assault victim, David Wasiel, and the other man who witnessed the incident, Doyle Odle, established that petitioner was drinking and acting aggressively that evening, that he made comments about two people dying that day, that he armed himself with two knives, that he threw one knife at Wasiel, and that he intentionally lunged toward and stabbed the murder victim, Kurt Houghteling, in the chest, and then fled the scene. Petitioner's own testimony further indicated that he had been drinking that evening and did not have a clear or consistent recollection of what transpired at the time of the crime. Given such significant evidence of petitioner's guilt and the lack of evidence showing that the crime was accidental, the state court reasonably determined that any *Doyle* error by the prosecutor was harmless beyond a reasonable doubt. Habeas relief is not warranted on this claim.

2. **Ineffective Assistance of Trial Counsel Claim**

Petitioner also argues that he is entitled to habeas relief because his trial counsel was ineffective for failing to object to the foregoing conduct of the prosecutor.

The Sixth Amendment guarantees a criminal defendant the right to the effective

assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, a petitioner must establish that counsel's deficient performance prejudiced the defense, i.e., that counsel's errors were so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas

13

review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (citations and internal quotation marks omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

Citing the *Strickland* standard, the Michigan Court of Appeals denied relief on this claim finding that the petitioner failed to show that he was prejudiced by trial counsel's conduct. The court explained in relevant part:

> Even assuming that defense counsel's failure to object fell below an objective standard of reasonableness, defendant has not established resulting prejudice. A successful objection would have precluded the jury from considering defendant's failure to mention his version of the events to the police as a reason for questioning the veracity of defendant's claim of an accidental stabbing. But as explained previously, defendant's self-admitted inability to recall significant details surrounding the offense and his testimony that he was "not sure of anything" independently undercut the reliability of his version of the events. Accordingly, there is no reasonable probability that the result of the trial would have been different had defense counsel objected and successfully excluded the evidence of defendant's silence.

*Henke*, 2016 WL 620184, at *5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Even assuming that trial counsel's performance was deficient, petitioner cannot establish that he was prejudiced by counsel's failure to object to the prosecutor's inquiry and argument. As discussed above, the prosecutor's allegedly improper conduct was harmless under the standard set forth in *Brecht*. Petitioner therefore fails to satisfy the

14

prejudice prong of *Strickland* and he cannot demonstrate that trial counsel was constitutionally ineffective. Habeas relief is not warranted on this claim.

V.      **Conclusion**

For the reasons stated above, the Court concludes that the petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court denies his application for a writ of habeas corpus.

Before the petitioner may appeal the court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a). A certificate of appealability may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court denies habeas relief on the merits of a claim, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The petitioner makes no such showing. Accordingly, the Court denies certificate of appealability.

Finally, the Court denies petitioner leave to proceed on appeal *in forma pauperis* because no appeal in this matter could be taken in good faith.


Dated: May 9, 2019  
      Detroit, Michigan

s/Bernard A. Friedman  
BERNARD A. FRIEDMAN  
SENIOR UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 9, 2019.

| | |
|---|---|
| Todd Edward Henke, #162250<br>Kinross Correctional Facility<br>4533 W. Industrial Park Drive<br>Kincheloe, MI 49786 | s/Johnetta M. Curry-Williams<br>Case Manager |